686 So.2d 629 (1996)
Paul Douglas GARRETT, Appellant,
v.
Rahammet MOHAMMED, Appellee.
No. 95-2236.
District Court of Appeal of Florida, Fifth District.
November 22, 1996.
Rehearing Denied January 15, 1997.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, for Appellant.
David C. Wiitala and Cynthia A. Rudy of Wiitala & Contole, P.A., North Palm Beach, for Appellee.
ANTOON, Judge.
Paul Garrett appeals a final judgment entered against him in a personal injury action. He argues that the trial court erred in denying his motion for mistrial which was based upon the existence of a "high-low" agreement which had not been disclosed prior to trial, and in applying a contingency risk multiplier *630 to calculate an award of attorney's fees under the offer of judgment statute. We affirm.
Appellee, Rahammet Mohammed, was injured in a five-car collision. He sued, among others, appellant and co-defendant Bertha Pierce. Two months prior to trial, the appellee filed a demand for a $100,000 judgment against appellant pursuant to section 768.79, Florida Statutes (1995). He filed a similar demand of Pierce in the amount of $25,000. The appellant's response was an offer of judgment in the amount of $15,000.
During the trial, the appellant learned that a "high-low agreement" existed between the appellee and Pierce. He immediately moved for a mistrial. The agreement set Pierce's liability at a range of no more than $15,000 and no less than $5,000. The trial court denied the motion for mistrial yet stated its intent to advise the jury of the agreement. The appellee and Pierce then settled and the jury was so advised.
The jury ultimately returned a verdict for the appellee, allocating 40% responsibility to appellant and 12½ responsibility to Pierce.[1] Final judgment was entered against the appellant in the amount $270,500.
The appellant argues that the trial court should have granted his motion for mistrial based on Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993). In Dosdourian, the Florida supreme court declared "Mary Carter Agreements" void as against public policy. A "Mary Carter Agreement" is a "contract by which one codefendant secretly agrees with the plaintiff that, if the defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other codefendants." Id. at 242. In prohibiting the use of "Mary Carter Agreements," the court included within its prohibition "any agreement which requires the settling defendant to remain in the litigation, regardless of whether there is a specified financial incentive to do so." Id. at 246. The appellant concedes that the agreement between Pierce and the appellee was not a "Mary Carter Agreement," yet, relying on the above quoted language, he contends that the secret nature of the instant agreement invokes the same dangers posed by a "Mary Carter Agreement." We disagree.
Under the agreement, Pierce was not required to remain in the litigation. She was free to either participate in the litigation or to walk away. The agreement was at all times subject to discovery by the appellant and could have been admitted into evidence. The trial court heard argument from the parties on the appellant's motion for mistrial and concluded that Pierce had in good faith defended the case and that the appellant was not prejudiced by the agreement. Therefore, the proscription set out in Dosdourian does not apply to the instant case and the trial court acted within its discretion in denying the motion for mistrial.[2]
We now address appellant's argument that the trial court erred in applying a contingency *631 risk multiplier in awarding attorney's fees. Following the trial, the appellee filed a "motion to tax costs and attorney's fees," pursuant to section 768.79, Florida Statutes (1995). The trial court granted the motion and, in awarding attorney's fees, applied a contingency risk multiplier of 1.5, yielding an award of $33,255.00.
In challenging the court's ruling, appellant relies on Schick v. Department of Agriculture & Consumer Services, 599 So.2d 641 (Fla.1992), wherein the court held that, where the legislature specifically sets forth the criteria to be used in establishing a reasonable fee, only those enumerated factors may be used in setting a fee. Id. at 644. The appellant maintains that the trial court was precluded from considering a contingency risk multiplier in this case because section 768.79(7)(b) includes enumerated criteria to be used in setting a reasonable fee. This argument is not persuasive.
Section 768.79 provides in pertinent part:
* * * * * *
(6)(b) ..., the plaintiff shall be awarded reasonable costs, including investigative expenses, an attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court,....
* * * * * *
(7)(b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:
* * * * * *
(Emphasis added.) This statute specifically directs the trial court to consider, in addition to certain enumerated criteria, the guidelines promulgated by the supreme court[3] and "all other relevant criteria." Given such a directive, a trial court may properly consider whether a fee is fixed or contingent. See R. Regulating Fla. Bar. 4-1.5(b)(8).
Moreover, the question of whether a risk multiplier can be used in calculating a reasonable fee under section 768.79 in a personal injury case was affirmatively answered in Collins v. Wilkins, 664 So.2d 14 (Fla. 4th DCA 1995), rev. denied, 670 So.2d 937 (Fla. 1996). We agree with the conclusion reached by the fourth district that the legislature has authorized trial courts to consider application of a contingency risk multiplier in such cases. Accordingly, the trial court's application of a 1.5 contingency risk multiplier in the instant case is affirmed.
Finding no error in the remaining claims of error raised, we affirm.
AFFIRMED.
PETERSON, C.J., and GOSHORN, J., concur.
NOTES
[1] Co-defendant Leonard Carpenter was found 12½ liable and co-defendant Robert Perrin was found 35% liable.
[2] It is unclear whether the supreme court in Dosdourian intended to outlaw high-low agreements in addition to "Mary Carter Agreements." This uncertainty is in part due to the court's failure to discuss 27th Avenue Gulf Service Center v. Smellie, 510 So.2d 996 (Fla. 3d DCA 1987), wherein the third district upheld the use of high-low agreements. Specifically, the third district concluded that a "high-low agreement" is distinguishable from a "Mary Carter Agreement" in that a high-low agreement does "not diminish the liability of one party by proportionately increasing the liability of another party." Id. at 998.

Perhaps the question of whether high-low agreements are covered by Dosdourian should turn on a case by case analysis of whether such agreements are in fact true settlements. In deciding whether the agreements are true settlements, the trial court should consider whether the agreement requires the co-defendant to participate in the trial. In other words, is the high range of the agreement contingent on participation in the trial. The trial court should also consider the amount in controversy as a result of the agreement. The greater the window between the "high" and the "low" limits of the agreement, the more incentive a co-defendant has in genuinely and aggressively litigating the dispute. If the trial court concludes that the "high-low agreement" is not a settlement and the codefendant still has a genuine incentive to defend, then in our view the agreement would not be prohibited by Dosdourian.
[3] See R. Regulating Fla. Bar 4-1.5.